UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ABIGAIL COSLOW, as Personal
Representative of the Estate of
KANDY COSLOW, deceased,

    Plaintiff,                              Case No. 1:25-cv-10455

v.                                          Honorable Thomas L. Ludington
                                              United States District Judge

FOOTPRINT ACQUISITION, LLC,
and THE TRAVELER INDEMNITY
COMPANY OF CONNECTICUT,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING PLAINTIFF'S COMPLAINT**

In 2021, Kandy Coslow died in a car accident with Defendant Footprint Acquisition LLC's ("Footprint") employee, Terressa Carson. Plaintiff Abigail Coslow was appointed representative of Kandy Coslow's estate (the "Estate"). Plaintiff initiated a case against Carson and her husband, alleging that Carson was negligent in causing Kandy Coslow's death. That wrongful death case is pending before the Circuit Court for the County of Clare. Home-Owners Insurance Company ("Auto-Owners") is defending the Carsons in that case.

Footprint has its own insurance coverage provided by The Traveler Indemnity Company of Connecticut ("Travelers"). That coverage extends to Footprint's employees when certain policy conditions are satisfied. The Estate moved to join Footprint and Travelers to the Clare County case, seeking to hold Footprint, as Carson's employer, vicariously liable for Kandy Coslow's death. But that motion was denied because the state court found that the statute of limitations had passed.

After that, Plaintiff initiated this case, seeking declaratory relief against Footprint and Travelers as an excess insurer under the insurance policy it provided to Footprint. Soon after, Footprint and Traveler's moved to dismiss this case, contending, among other things, that Plaintiff lacks standing to pursue this declaratory relief action and that it is otherwise not ripe for review. As explained below, Travelers and Footprint are correct. So their Motion to Dismiss will be granted, and Plaintiff's Complaint will be dismissed.

I.

A.

In December 2020, Defendant Footprint Acquisition, LLC ("Footprint") purchased a one-year commercial insurance policy (the "Policy") from Defendant Travelers Indemnity Company of Connecticut ("Travelers"). ECF No. 1 at PageID.15. The Policy included business auto coverage. *Id.* at PageID.28. When the Policy's conditions were satisfied, that auto coverage provided up to $1,000,000 in coverage. *Id.* at PageID.11, 21. And although Footprint was the named insured, the Policy also listed other insureds, including Footprint's employees while using certain "covered" vehicles "in [its] business." *See id.* at PageID.30–31, 54.

Under the Policy, "covered" vehicles generally fall into two categories with distinct scopes of coverage. First, the Policy provided primary insurance coverage for Footprint-owned vehicles. *E.g., id.* at PageID.37. Second, key here, the Policy offered excess insurance coverage[1] for certain

---

[1] Plaintiff admits that this excess insurance coverage is the operative coverage. ECF No. 1 at PageID.11. Excess insurance "kicks in only after underlying" primary "insurance is exhausted." *URS Corp. v. Travelers Indem. Co.*, 501 F. Supp. 2d 968, 973 (E.D. Mich. 2007) (citation modified). Under Michigan law, there are two types of excess insurance: (1) "true" excess insurance, which exists "where a single insured has two policies covering the same loss, but one policy is written with the expectation that the primary will conduct all of the investigation, negotiation and defense of claims until its limits are exhausted," *Frankenmuth Mut. Ins. Co. v. Cont'l Ins. Co.*, 537 N.W.2d 879, 881 (Mich. 1995) (citation modified); and (2) "coincidental" excess coverage, which is the product of an "other-insurance clause" within a primary policy and offers primary coverage unless another primary policy covers the relevant loss, at which point the

vehicles that Footprint did not own when "other collectible insurance" existed. *Id.* This excess coverage included vehicles owned by employees or "members of their household" when "used in connection with [Footprint's] business." *Id.* at PageID.21, 29.

As for financial responsibility, the Policy required Travelers to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . caused by an 'accident' and resulting from the . . . use of a covered" vehicle. *Id.* at PageID.30. It also imposed on Travelers a "duty to defend any 'insured' against a 'suit' asking for such damages." *Id.* But that duty was limited to suits seeking damages for harms to which the Policy applied. *Id.*

**B.**

On August 2, 2021, one of Footprint's employees, Terressa Carson, allegedly disregarded a stop sign and collided with Kandy Coslow while driving her husband's car. ECF No. 1 at PageID.3–4, 79–80. The collision killed Coslow. *Id.* After that, Plaintiff Abigail Coslow was appointed personal representative of Coslow's estate (the "Estate"). *Id.* at PageID.2.

On behalf of the Estate, Plaintiff sued Carson and her husband for negligence in the Circuit Court for the County of Clare on January 16, 2024. *Id.* at PageID.4–5, 94–99. The Carsons' primary insurer, Home-Owners Insurance Company ("Auto-Owners"), is defending the claim under a personal automobile liability policy providing up to $510,000 in coverage. *Id.* at PageID.4. Initially, Plaintiff did not assert claims against Footprint in that lawsuit. *Id.* at PageID.5.

---

other-insurance clause morphs the coverage into excess coverage, *Bosco v. Bauermeister*, 571 N.W.2d 509, 516 (Mich. 1997).

Here, the Policy offered coincidental excess insurance for covered vehicles that Footprint did not own—not "true" excess insurance. Indeed, it provided primary coverage unless, as here, other primary collectible insurance existed. *See* ECF No. 1 at PageID.37. But this distinction does not affect this case because the issues here deal with coverage in the first instance, not insurer priority, where the differences matter. *See, e.g.*, *Bosco*, 571 N.W.2d at 516.

But Plaintiff later moved to amend her complaint to add facts alleging that Carson was in the course and scope of her employment with Footprint at the time of the collision. *Id.* She also sought to add a *respondeat superior* claim against Footprint. *Id.* Plaintiff contended that she was not aware of the facts giving rise to a claim against Footprint until deposing Carson, who initially represented in an interrogatory that she was on her way to work when the accident occurred. *Id.* at PageID.103–04. But later, during her deposition, Carson revealed that she was already at work, driving to a new working location, when the accident occurred. *Id.*

Ultimately, the state judge denied Plaintiff's motion to amend. *Id.* at PageID.117–22. The judge concluded that the proposed amendment was futile because the three-year statute of limitations for general torts under MICH. COMP. LAWS § 600.5805(2) barred Plaintiff's claims against Footprint. *Id.* After that, Footprint and Travelers allegedly ceased participation in resolving the state case. *Id.* at PageID.5.

On February 18, 2025, Plaintiff brought this declaratory relief action against Defendants Footprint and Travelers. ECF No. 1. In essence, Plaintiff asserts that Carson is another insured under the Policy that Travelers issued to Footprint. *Id.* at 10–11. So in Plaintiff's view, Travelers has a duty to defend and indemnify Carson in the underlying state case. *Id.* at PageID.11. Soon after, Defendants moved to dismiss the case under Civil Rules 12(b)(1) and 12(b)(6). ECF No. 8.

**II.**

Motions to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) take two forms: facial and factual. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A facial attack tests the sufficiency of the complaint's jurisdictional allegations. *Ritchie*, 15 F.3d at 598. The question is whether the plaintiff has alleged facts that, taken as true, establish a basis for subject-matter jurisdiction. *Cartwright*, 751 F.3d at 752. In resolving a facial challenge, courts accept the complaint's material allegations as true and

construe them in the light most favorable to the nonmoving party. *Ritchie*, 15 F.3d at 598. Review is confined to the pleadings. *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012). A factual attack is different. It contests the factual existence of subject-matter jurisdiction rather than the sufficiency of the pleadings. *Ritchie*, 15 F.3d at 598. In such cases, the defendant challenges the validity of the jurisdictional facts alleged in the complaint—so courts can assess evidence outside the complaint. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

By contrast, under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any cognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this rule, the court accepts all factual allegations in the complaint as true and construes the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But courts need not accept the complaint's legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### III.

Defendants argue Plaintiff's Complaint must be dismissed for two overarching reasons. First, Defendants advance a jurisdictional argument, contending that Plaintiff lacks standing to bring this declaratory action and that the action is otherwise not ripe for review.[2] ECF No. 9 at

---

[2] In their brief, Defendants place this standing argument second. *See* ECF No. 9 at PageID.166. But it must be addressed first because it challenges this Court's subject-matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)); *Children's Hosp. Med. Ctr. of Akron v.*

PageID.166–76. Second, Defendants argue that the state judge's order denying Plaintiff leave to amend her complaint in the underlying state case precludes this action. *Id.* at PageID.160–66.

In the end, however, this Court need only address the first argument because it is dispositive. Plaintiff lacks standing to pursue declaratory relief concerning Travelers's duty to defend Carson, and issues concerning indemnity are not ripe for review. Thus, this Court lacks jurisdiction over Plaintiff's declaratory relief action.

### A.

The Federal Government's branches possess limited and separated powers. *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 536 (6th Cir. 2021). The federal judiciary is not immune from such limitations—so not all disputes belong in federal court. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020). Under Article III of the United States Constitution, the federal judiciary's power extends only to "Cases" and "Controversies." *United States v. Texas*, 599 U.S. 670, 675 (2023). So federal courts may not pass "judgments on theoretical disputes that may or may not materialize." *Saginaw County v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020). Put simply, federal courts cannot "issue advisory opinions." *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022). Flowing from these limitations are various "justiciability doctrines, including" the twin doctrines of "standing and ripeness." *Id.*

Starting with standing, Article III requires that a plaintiff have a "personal stake" in a case—a plaintiff must have "standing." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379

---

*Youngstown Assocs. in Radiology, Inc.*, 612 F. App'x 836, 837 (6th Cir. 2015) ("If a federal court does not have such jurisdiction, according to the doctrine adopted in the *Steel Co.* case, it may not decide the merits, and hence it must decide such standing questions first. This order-of-decision doctrine is now well established.").

(2024). To demonstrate Article III standing, plaintiffs bear the burden of answering "a basic question: 'What's it to you?'" *Id.* (quoting A. Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 882 (1983)). In that vein, plaintiffs must establish three things: (1) they have suffered an injury-in-fact; (2) their injury is traceable to the defendant's conduct; and (3) the injury is likely to be redressed by a favorable judicial decision. *Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 750 (6th Cir. 2023). Plaintiffs "must show an imminent or actual injury before" suing in federal court. *STAT Emergency*, 946 F.3d at 954. They "cannot sue simply to avoid a possible future injury." *Id.* at 954–55 (citation modified).

Ripeness is related. The ripeness doctrine arises "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 n.18 (1993). It serves to "avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (citation modified).

Ripeness turns on two questions. First, a court must assess whether "the claim arise[s] in a concrete factual context and concern[s] a dispute that is likely to come to pass." *New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 460 (6th Cir. 2024) (citation modified). On that front, a claim is unripe when it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation modified). Second, a court must determine whether "deferring review impose[s] hardship on the participants in the lawsuit." *New Heights Farm I, LLC*, 119 F.4th at 460.

And relevant here, the Declaratory Judgment Act does not modify these rules. *Safety Specialty Ins. Co.*, 53 F.4th at 1020. It "offers only an 'alternative remedy—a declaratory judgment—for *existing* cases or controversies.'" *Id.* (quoting *STAT Emergency*, 946 F.3d at 954). So those seeking declaratory relief must satisfy both Article III and the Declaratory Judgment Act's prerequisites. *Id.* To that end, they must establish that the dispute presents (1) a Case or Controversy (Article III), and (2) "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'" (Declaratory Judgment Act). *Id.* (quoting *STAT Emergency*, 946 F.3d at 954).

**B.**

Turn to Plaintiff's request for declaratory relief and whether it is justiciable. Recall that Plaintiff seeks a declaration that her claim against the Carsons is covered under the Policy purchased by Footprint from Travelers, and thus Travelers has (1) a duty to defend the Carsons in the underlying state-court case, and (2) a duty to indemnify them for damages stemming from that case. *See* ECF No. 1 at PageID.11. At bottom, Plaintiff's declaratory relief action is not justiciable at this juncture.

**1.**

Begin with the duty to defend. It presents a straightforward inquiry. Plaintiff lacks standing to seek a declaration that Travelers owes the Carsons a duty to defend. Indeed, Plaintiff cannot establish an injury redressable by declaratory relief on this front.

Under Michigan law, the duty to defend requires an insurer to provide legal counsel and pay litigation costs when the policy arguably covers the alleged liability. *Safety Specialty Ins. Co. v. State Farm Fire & Cas. Co.*, 53 F.4th 1016, 1021 (6th Cir. 2022) (citing *Farmers & Merchants Mut. Fire Ins. Co. v. Lemire*, 434 N.W.2d 253, 255 (Mich. Ct. App. 1988)). But that duty is "a right affecting only the obligations of the insurer vis-à-vis the insured." *Id.* (quoting *Allstate Ins. Co. v.*

*Wayne County*, 760 F.2d 689, 695 (6th Cir. 1985)). The duty to defend does not extend to injured claimants, who have "no stake in" whether an insurer pays for the insured's defense or litigation expenses. *Id.* Here, Plaintiff is an injured claimant. Whether Travelers pays for the Carsons' attorneys or litigation costs does not affect Plaintiff's rights or remedies. Plaintiff therefore lacks a cognizable interest in the existence of a duty to defend.

The posture of the underlying litigation confirms the point. The primary insurer, Auto-Owners, is presently defending the Carsons. Under Michigan law, the primary insurer is liable for defense costs until its policy limits are exhausted. *Frankenmuth Mut. Ins. Co.*, 537 N.W.2d at 882. An excess insurer has no duty to defend unless and until the primary insurer is excused under the terms of its policy. *Id.* Nothing in the record suggests that Auto-Owners has been excused or that exhaustion of its coverage is imminent. In this way, even if Plaintiff had some abstract interest in whether an insurer defends the Carsons, a declaration that Travelers owes a duty to defend would not alter Defendants' conduct toward Plaintiff or redress any injury Plaintiff claims to suffer. *Safety Specialty*, 53 F.4th at 1021.

The cases Plaintiff cites as support do not alter the analysis. Plaintiff first relies on *Allstate Insurance Co. v. Hayes*, 499 N.W.2d 743 (Mich. 1993), asserting that it permits injured claimants to bring declaratory actions to determine their rights under an insurance policy. ECF No. 12 at PageID.315–16. But *Hayes*'s holding was far narrower and did not involve an excess insurer on the periphery. There, the insurer initiated a declaratory action against its insured and joined the injured party as a defendant, conceding the injured party's interest in the proceeding. The Michigan Supreme Court held only that, under those circumstances, the injured party could participate in the action through final resolution of coverage. *Id.* at 746.

That holding does not authorize an injured claimant to initiate a federal declaratory action against an excess insurer regarding its duty to defend an insured—particularly where, as here, a primary insurer is actively providing a defense. After all, as the Sixth Circuit explained in *Safety Specialty*, "[w]hile *Hayes* may explain" an insurer's interest in joining an injured claimant in a declaratory relief action and the injured claimant's interest in defending coverage in that action, it does "not speak to federal courts' jurisdiction over the parties in these actions." 53 F.4th at 1022.

Plaintiff's second case fares no better. Plaintiff cites *Auto-Owners Ins. Co. v. Keizer-Morris, Inc.*, 773 N.W.2d 267 (Mich. Ct. App. 2009), contending that it permits injured claimants to litigate coverage issues when the insured does not contest coverage. There, a primary insurer filed a declaratory relief action against the insured, a defunct corporation, seeking a declaration that it had no duty to defend or indemnify in a breach-of-contract-and-warranty case. *Id.* at 269. The defunct insured did "little to contest [the insurer's] position," so the injured claimant sought to intervene in the declaratory action. *Id.* The Michigan Court of Appeals held that under those facts, the injured claimant could intervene because "his ability to recover damages from [the insured] depends on [it] having . . . coverage for the injury-causing incident." *Id.*

That *Keizer-Morris* holding is distinguishable from this case. First, this case does not involve a defunct insured, the absence of a defense, or a scenario in which coverage is the injured party's sole path to recovery. Instead, Plaintiff seeks to initiate a separate action against an excess insurer while a primary insurer is actively defending the insured. Second, and more importantly, like *Hayes*, *Keizer-Morris* does not speak to federal courts' jurisdiction when an injured claimant seeks a declaration that an excess insurer must cover a potential insured's litigation expenses.

In sum, Plaintiff does not have standing to seek a declaration that Travelers owes the Carsons a duty to defend. Whether Travelers must pay the Carsons' litigation expenses and attorneys' fees in no way affects Plaintiff.

**2.**

Turn next to the duty to indemnify. Under Michigan law, that duty requires an insurer "to pay the injured party any damages awarded against the insured for the covered loss." *Safety Specialty*, 53 F.4th at 1021 (citing *Farmers & Merchants Mut. Fire Ins. Co.*, 434 N.W.2d at 255). The duty arises only after liability has been established or the parties have settled the underlying action. *Allstate Vehicle & Prop. Ins. Co. v. Todaro*, 443 F. Supp. 3d 801, 808 (E.D. Mich. 2020). Here, even assuming that Plaintiff may, in general, seek declaratory relief concerning indemnification, the claim is not ripe.

The Policy makes clear that Travelers's duty to indemnify, if it ever arises, depends on a sequence of contingencies that have not yet occurred and may not occur. To begin with, the underlying action remains pending. Plaintiff must first establish liability against the Carsons or resolve her claims through settlement. Even then, because Travelers is an excess insurer, liability or settlement must exceed Auto-Owners' primary coverage of $510,000 before Travelers' coverage comes into play. And even an excess judgment would not suffice on its own to produce issues between Plaintiff and Travelers. Under Michigan law, Plaintiff could proceed against Travelers for compensation only if the Carsons were unable or unwilling to satisfy the excess portion of the judgment, at which point Plaintiff could initiate a garnishment action for the unpaid amount. *Safety Specialty*, 53 F.4th at 1022 (citing Mich. Comp. Laws § 500.3006).

These layered contingencies foreclose ripeness under the first inquiry: whether the dispute arises in a concrete factual context and is likely to come to pass. *See New Heights Farm I, LLC*, 119 F.4th at 460 (finding a claim unripe where it was unclear "whether [the insurer] will owe . . .

any money at all"). Not to mention, the Sixth Circuit has deemed a prejudgment declaratory relief action concerning an insurer's duty to indemnify unripe where nearly identical (if not fewer) contingencies were present. *Safety Specialty*, 53 F.4th at 1022–24. Moreover, the fact that Travelers is an excess insurer matters, too: unlike cases involving primary insurers, "merely winning [the] claim or establishing damages" against the insured is not enough to trigger a duty to indemnify here. *Id.* at 1022. That distinction separates this case from decisions such as *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941), where primary insurers sought declaratory relief against an insured and the injured party before judgment in the underlying state case.

Plaintiff resists this conclusion by arguing that Auto-Owners has effectively conceded exhaustion of its policy. She points to Auto-Owners' offer of judgment in the state-court action for the full $510,000 policy limit. ECF No. 12 at PageID.318–19; ECF No. 12-1 at PageID.323. But the offer of judgment does not activate excess coverage. If anything, it reflects Auto-Owners' position that Plaintiff's claims can be resolved within the primary policy limits. Indeed, were Plaintiff to accept the offer, which she has not at this juncture, Michigan Court Rules would require entry of a judgment for $510,000—ending the case without triggering excess coverage because the judgment would not exceed $510,000. *See* MICH. CT. R. 2.405(C).

The second ripeness inquiry—whether withholding review would impose hardship—points in the same direction. Plaintiff identifies no concrete hardship from deferring review. Plaintiff notes that it is "more judicially economical to determine whether [the Policy] applies now," and avoid future litigation. ECF No. 12 at PageID.311. Perhaps. But the opposite is equally true. Continued litigation in the underlying action may reveal that this declaratory judgment action was "a costly and time-consuming hypothetical," *Safety Specialty*, 53 F.4th at 1022, if damages never exceed primary coverage.

All in all, both ripeness inquiries establish that Plaintiffs' declaratory relief claim is not ripe. Plaintiff's claim for declaratory relief rests on a chain of contingencies that may never materialize, and she has not shown hardship from waiting to see whether they do. At this stage, then, a declaration concerning Travelers' duty to indemnify would be premature.

*** 

In sum, because Plaintiff lacks standing to sue Travelers over its duty to defend and its claim for the duty to indemnify lacks ripeness, no substantial controversy of sufficient immediacy and reality exists between Plaintiff and Defendants.[3] Thus, Defendants' Motion to Dismiss, ECF No. 11, will be granted, and Plaintiff's Complaint, ECF No. 1, will be dismissed.

## IV.

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 11, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED**.

**This is a final order and closes this case.**

Dated: January 22, 2026                              s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

---

[3] Based on this analysis, this Court need not address Defendants' argument that this action is a prohibited direct action against an insurer under MICH. COMP. LAWS § 500.3030.